# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 12, 2014 Session

## BRIAN S. ROBERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR043428      Timothy L. Easter, Judge**

**No. M2013-02565-CCA-R3-PC - Filed March 27, 2015**

The Petitioner, Brian S. Roberson, appeals from the denial of post-conviction relief by the Circuit Court for Williamson County. He was convicted for the sale of .5 grams or more of cocaine and sentenced to thirty years' imprisonment in the Tennessee Department of Correction. On appeal, the Petitioner argues that he received ineffective assistance of trial and appellate counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

M. Matthew Milligan, Franklin, Tennessee, for the Petitioner, Brian S. Roberson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim Helper, District Attorney General; and Sean D. Buddy, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner's conviction for the sale of .5 grams or more of cocaine stems from a controlled purchase involving a confidential informant and Joey Kimble, Director of the 21st Judicial District Drug Task Force. This court summarized the underlying facts on direct appeal as follows:

> Officer Chris Mobley was an officer with the drug task force of the Williamson County Sheriff's Department. On July 15, 2003, he worked with Sylvester Island, a confidential informant, who was making a controlled purchase of cocaine. Island was paid $100 per transaction and had his rent

paid by the drug task force. Officer Mobley had worked with Island in the past. Officer Mobley and another officer, Agent Zollicoffer, met Island and searched both his person and his vehicle finding no contraband. They set up a transmitter and recording device in order to record the purchase. The officers then issued Island $250 to make the purchase. In the presence of the officers, Island made a phone call to the [Petitioner], known to him as "Ratman," in order to schedule the purchase. At some point on Island's way to meet the [Petitioner], the transmitting equipment stopped working. Island met with the officers so that they could fix the problem. Island then continued on his way.

When Island first arrived to meet Ratman, the [Petitioner] was not there. Ratman arrived shortly thereafter in his car. The [Petitioner] got in Island's car. Island gave the [Petitioner] the $250 and the [Petitioner] gave Island approximately 5 to 6 grams of crack cocaine. After the deal was over, Island began talking to a neighbor while the [Petitioner] departed in his car. Island returned to the officers at the meeting location.

The officers once again searched Island and his vehicle and found no contraband other than that just purchased. Island gave Officer Zollicoffer the cocaine he had purchased with the $250. The cocaine's preliminary weight was 6.2 grams. Upon returning to the drug task force, the officers conducted a field test, and the substance tested positive for being cocaine. The officers placed the cocaine in an evidence bag, sealed the bag with tape, and wrote their initials on the tape. The evidence bag was placed in a temporary evidence locker.

Joey Kimble is the Director of the 21st Judicial District Drug Task Force. He is also the evidence custodian. On July 16, 2003, he retrieved the cocaine sold by the [Petitioner] to Island and placed it in the evidence room.

On August 11, 2003, the Grand Jury of Williamson County indicted the [Petitioner] for two counts of selling .5 grams or more of cocaine.

On October 1, 2003, Director Kimble took the cocaine to the TBI laboratory and gave the cocaine to a lab technician. Agent Cassandra Franklin is a forensic chemist with the Tennessee Bureau of Investigation. She received a sealed bag from a laboratory technician. She opened the bag and tested the substance. She tested the substance purchased by Island at the TBI laboratory. She determined that the substance was indeed cocaine, and the cocaine base

weighed 5.4 grams. After testing the cocaine, she replaced the cocaine in the bag and sealed the bag with evidence tape and wrote her initials on the tape.

On January 21, 2004, Director Kimble retrieved the cocaine and returned it to the evidence room at the drug task force where it remained until the day of trial.

At the conclusion of a jury trial held on March 8, 2005, the jury found the [Petitioner] guilty of one count of the sale of .5 grams or more of cocaine. The trial court held a sentencing hearing on May 16, 2005. The trial court sentenced the [Petitioner] to fifty-four years as a Range III Persistent Offender to be served consecutively to two unrelated sentences.

State v. Brian Roberson, No. M2005-01771-CCA-R3-CD, 2007 WL 92354, at *1-2 (Tenn. Crim. App. Jan. 11, 2007), perm. app. denied (Tenn. Apr. 23, 2007). This court affirmed the Petitioner's conviction but remanded the case for resentencing, noting that the Petitioner should have been sentenced as a Range IV career offender to thirty years. Id. at *8-9. The Tennessee Supreme Court denied the Petitioner's permission to appeal.

On April 24, 2008, the Petitioner filed a timely pro se petition for post-conviction relief alleging multiple grounds of ineffective assistance of counsel. The Petitioner was subsequently appointed counsel, but no amended petition was filed on his behalf. The following evidence, as relevant to this appeal, was adduced at the June 24, 2013 post-conviction hearing.

**Post-Conviction Hearing.** The Petitioner testified that his appellate counsel did not meet with him or call him prior to filing the appellate brief. He said that appellate counsel omitted the issue of the State's use of perjured testimony at his trial. He stated that he would have asked appellate counsel to include the issue if she had met with him prior to submitting the brief. The Petitioner recalled that he only met with appellate counsel when he had to appear in court. According to the Petitioner, a State's witness testified at trial regarding an action that the witness did not actually perform. Specifically, the Petitioner alleged that Agent Chris Mobley testified regarding meeting with and obtaining the cocaine from the confidential informant and then providing the secured evidence to Director Joey Kimble of the 21st Judicial District Drug Task Force. The Petitioner maintained that this testimony was false because Director Kimble later testified that Agent Leonardo Zollicoffer's name was listed in the evidence log. He produced a letter dated April 17, 2006, that he wrote to appellate counsel after the brief had been filed which urged counsel to argue the perjured testimony issue. The Petitioner said that this testimony prejudiced his case because some

jurors had stated that they found law enforcement to be highly credible. He believed that his conviction would have been reversed if appellate counsel had raised the issue.

The Petitioner testified that his trial counsel was ineffective for failing to secure a hearing to suppress the video and audio recordings of the controlled purchase. He said that he asked trial counsel twice to attempt to suppress this evidence. He stated that trial counsel's failure prejudiced his defense because the recordings were essential to his conviction. The Petitioner also alleged that trial counsel was ineffective because counsel did not object when the Petitioner told him that the trial judge and some jurors had fallen asleep. The Petitioner testified that during the presentation of evidence, he noticed that a few jurors and the judge had been nodding off and not paying attention. He later learned that one of the sleeping jurors was the foreman. He stated that the outcome of the two-day trial would have been different if the judge and members of the jury had not been asleep. The Petitioner further stated that trial counsel was ineffective because counsel did not provide the Petitioner with the State's notices to seek enhanced punishment and to sentence him as a habitual drug offender prior to trial. After he was sentenced, the Petitioner filed a pro se motion alleging invalid notice on the part of the State. He said that he filed the motion pro se because he did not receive trial paperwork until after the trial. The Petitioner testified that he would not have gone to trial if he had been aware of the possibility of enhanced punishment. He stated that he and trial counsel did not discuss the sentencing factors. The Petitioner claimed that the cumulative effect of the errors of trial and appellate counsel prejudiced the judicial process and warranted reversal in his case.

On cross-examination, the Petitioner acknowledged that trial counsel objected to the chain of custody established in the case and that appellate counsel raised the issue on direct appeal. He agreed that the perjury issue related to the chain of custody of the evidence. The Petitioner maintained that some jurors and the trial judge were actually asleep, but he could not provide specific facts to support his claim. He agreed that trial counsel met with him multiple times before trial and that he had five prior drug convictions. The Petitioner testified that trial counsel discussed the potential years of his sentence but never told him about the State's notice to seek enhanced punishment. He agreed that the State had offered twenty-year and twenty-two-year sentences and that he wanted to go to trial because he believed he was innocent of the charge.

On redirect examination, the Petitioner testified that trial counsel was surprised when he received a fifty-four-year sentence. He said he did not realize his sentence could be more than twenty or twenty-two years until he spoke with an inmate legal advisor and looked at a chart. According to the Petitioner, when he wrote to trial counsel that his prior convictions should not have enhanced his sentence, counsel responded by acknowledging that the Petitioner received a higher sentence than warranted. He said that he saw trial counsel make

-4-

a note about the sleeping jurors but that counsel never objected on the record. He agreed that a point of reference would have been established if trial counsel had raised the issue.

Trial counsel testified that he passed the Tennessee Bar in 2000 and began by practicing as a prosecutor for three years. During that time, he tried drug cases involving confidential informants. He then entered private practice and represented criminal defendants, including individuals charged with drug offenses. He was the Petitioner's third court-appointed counsel in this case, and he reviewed the discovery materials with the Petitioner, including notes from the previous attorney. Trial counsel said that he did not file a motion to suppress the audio and video recordings because he did not have a good faith basis to file such a motion. There was no Fourth Amendment issue regarding illegal search and seizure, and he considered the evidence to be relevant. He stated that "[t]he tape was simply [the Petitioner] getting into a vehicle with [the confidential informant] and having a conversation." Trial counsel was unable to show the video to the Petitioner before trial because he could not bring video equipment into the jail. However, trial counsel said he "had made copious notes on exactly what was said and what the video showed," and he discussed the evidence with the Petitioner. Because eight years had passed since the trial, trial counsel could not specifically recall whether he informed the Petitioner of the reason for not filing a motion to suppress. He said that he and the Petitioner had disagreed on whether the tape contained sufficient evidence to support a drug conviction. Contrary to trial counsel's advice, the Petitioner did not believe that he could be convicted because the video did not depict a hand-to-hand transaction.

Trial counsel acknowledged that the Petitioner alerted him during trial that some jurors may have been nodding off. He recalled that there was a juror whose eyes would intermittently open and close for a few seconds, but he was uncertain whether the juror was actually asleep. Trial counsel stated that if the juror had indeed nodded off momentarily, "it would not have been in [the Petitioner]'s best interest to point it out to everyone in the [c]ourtroom[.]" However, he did not believe that the trial judge fell asleep. He said that the judge "was merely closing his eyes when he listened to the tape." Trial counsel testified that it was a strategic decision not to question whether the juror was asleep because embarrassing the juror would have harmed the Petitioner's case.

Trial counsel testified that he discussed everything relative to the case with the Petitioner in the jail before trial. He could not recall whether he provided the Petitioner with a copy of the State's third notice to seek enhanced punishment. However, he stated that he reviewed the notice with the Petitioner and that it contained the "same five prior convictions[.]" He did not file an objection to the State's use of enhancement factors because he thought the convictions were valid. Trial counsel acknowledged that he possibly did not provide the habitual drug offender notice to the Petitioner, but he testified that they

had "lengthy discussions" about the Petitioner's prior record, sentencing range, percentage, and likely amount of time to be served if convicted. Trial counsel said that he thoroughly explained the possible sentence and that the Petitioner understood. Even though the Petitioner faced a possibility of 80 to 120 years for all of his convictions, trial counsel said that the Petitioner rejected the State's offer of twenty-two years at forty-five percent because he did not believe the proof was adequate to convict him. Although trial counsel advised the Petitioner that the likelihood of a conviction was high, the Petitioner was determined to have a trial.

Appellate counsel testified that she was appointed to represent the Petitioner several months after his motion for new trial was denied. She conferred with trial counsel about the case and then reviewed the trial records. Appellate counsel could not recall when she first spoke with the Petitioner, but she said that they communicated in person at the courthouse and through letters. She stated that the Petitioner "was very opinionated about the issues" and "ha[d] a lot to share." She could not recall whether she met with the Petitioner before or after the appellate brief was filed, but she was certain that they discussed the issues before the brief was submitted. Appellate counsel said she kept a record of the letters but could not locate the file prior to the hearing. She stated that the Petitioner possibly sent her a letter raising an issue that was not included in the brief, but she did not recall receiving such a letter. After the appeal in this case, appellate counsel represented the Petitioner at trial in a separate matter.

Appellate counsel recalled that six issues were raised on appeal and that the Court of Criminal Appeals granted relief on the sentencing issue. Specifically, the appellate court found that the trial court should have enhanced the Petitioner's range rather than his felony classification. Accordingly, the Petitioner was resentenced for a Range IV, Class B felony instead of a Range III, Class A felony. When presented with the Petitioner's April 17, 2006 letter urging her to argue the perjured testimony issue, appellate counsel did not remember the document. She agreed that the letter was sent after the brief had been filed and that the issue had not been included. Appellate counsel stated that the Petitioner never raised the perjury issue prior to this letter and that trial counsel would have included the issue in the motion for new trial if the Petitioner had mentioned it. Moreover, she did not believe that the issue had any merit because "there is nothing at all that would show that the officer's testimony was perjured." Appellate counsel nevertheless opined that the issue would have been harmless error on appeal because it related to the chain of custody, an issue that was resolved by the appellate court. She stated that even if there had been conflicting testimony, there was no indication that the chain of custody had been compromised.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On October 16, 2013, the court entered a written order denying relief.

Specifically, the court accredited the testimony of trial and appellate counsel and concluded that the Petitioner failed to establish either deficient representation or prejudice. The Petitioner timely appealed the post-conviction court's order.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred in concluding that trial and appellate counsel rendered effective assistance of counsel.[1] He contends that trial counsel was deficient by failing to suppress the audio and video recordings on evidentiary grounds, failing to object to the sleeping judge and jurors, and failing to inform the Petitioner of the State's multiple notices to enhance punishment. The Petitioner further alleges that appellate counsel was ineffective for omitting the perjured testimony issue on direct appeal. Finally, the Petitioner asserts that he is entitled to post-conviction relief based on the cumulative errors committed during trial and on appeal. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he received ineffective assistance of trial and appellate counsel. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

---

[1] We have re-ordered the Petitioner's issues for clarity.

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the evidence establishes that the attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). This two-prong Strickland test applies to claims of ineffective assistance of counsel at either the trial or appellate levels. See Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995) (citing Evitts v. Lucey, 469 U.S. 387 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed

-8-

ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner argues that his appellate and trial counsel were ineffective for several reasons. He first complains that trial counsel was ineffective for failing to secure a hearing to suppress the audio and video evidence despite the Petitioner's request. He maintains that trial counsel should have challenged the admission of the evidence because the video did not show a hand-to-hand exchange between the Petitioner and the confidential informant. At the post-conviction hearing, trial counsel testified that he did not have a good faith basis to file a motion to suppress the recordings of the controlled purchase. He stated that the video showed the Petitioner having a conversation in the confidential informant's vehicle and that the evidence was not obtained through an unreasonable search and seizure. Moreover, trial counsel considered the evidence to be relevant. He noted that the Petitioner mistakenly believed that the video was inadequate to support a conviction. In its written order denying relief, the post-conviction court accredited trial counsel's testimony that there was no valid ground to suppress the video and found counsel's strategy to be reasonable under the circumstances. We agree with the post-conviction court's conclusion that trial counsel was not ineffective in this regard. Although the Petitioner faults trial counsel for failing to challenge the admission of the recordings on evidentiary grounds, he has failed to establish that counsel's performance was deficient.

Next, the Petitioner alleges that the judge and some jurors fell asleep during trial and that trial counsel was ineffective for failing to raise an objection. He contends that the issue would have been preserved for appeal and that the outcome of the proceedings would have been different if trial counsel had properly addressed it. At the post-conviction hearing, trial counsel recalled that a juror may have nodded off for a few seconds, but he could not state with certainty whether any jurors were actually asleep. He stated that the judge had merely closed his eyes to listen to the tape. Trial counsel testified that the benefit of waking up a juror who had fallen asleep for a few seconds was not worth the detriment of embarrassing the juror and harming the Petitioner's case. In denying relief based on this claim, the post-conviction court found that the Petitioner failed to demonstrate that anyone was actually asleep. The court specifically accredited the testimony of trial counsel and found that counsel made the strategic decision not to bring the matter to the trial court's attention. We agree with the post-conviction court that trial counsel's decision was tactical and did not amount to deficient performance by counsel. See, e.g., Doris Nell Jones v. State, No. M2011-02343-CCA-R3-PC, 2013 WL 871327, at *5 (Tenn. Crim. App. Mar. 8, 2013) (trial counsel's strategic decision not to call attention to sleeping juror did not entitle the petitioner to post-conviction relief), perm. app. denied (Tenn. Aug. 14, 2013); Franklin Howard v. State, No. W2009-00279-CCA-R3-PC, 2010 WL 2482327, at *7 (Tenn. Crim. App. June 17, 2010) (post-conviction relief was not warranted where petitioner failed to establish by clear

and convincing evidence that juror was actually asleep), perm. app. denied (Tenn. Nov. 18, 2010). Moreover, apart from the Petitioner's bare assertion of prejudice, he has failed to support his claim with specific facts or argument. Accordingly, the Petitioner is not entitled to relief on this issue.

The Petitioner also asserts that trial counsel failed to provide him with pretrial pleadings, including the State's multiple notices to seek enhanced punishment. The Petitioner contends that he would not have gone to trial if he had known the extent of his sentencing range. At the post-conviction hearing, the Petitioner testified that he did not receive trial documents until after his trial. However, he acknowledged that trial counsel met with him multiple times before trial; that he had five prior drug convictions; and that he rejected the State's offer of twenty-two years because he believed he was innocent. In contrast to the Petitioner's claims, trial counsel testified that he and the Petitioner had lengthy discussions regarding the Petitioner's prior record, sentencing range, and possible sentence if convicted. Regarding this claim for relief, the post-conviction court found trial counsel to be more credible and concluded that the Petitioner failed to prove either prong of the Strickland test. The court noted that trial counsel was the Petitioner's third court-appointed attorney and that "[a]fter successfully negotiating and relaying a reduced offer to the Petitioner, it was the Petitioner who rejected the offer and insisted on going to trial." The record fully supports the post-conviction court's conclusion that trial counsel competently represented the Petitioner during pretrial plea negotiations. Even though the Petitioner understood that he faced a possible sentence of 80 to 120 years for all his convictions, the Petitioner elected to go to trial rather than to accept the State's offer of twenty-two years at forty-five percent release eligibility. We conclude that the Petitioner has failed to meet his burden of proof regarding this ground for relief.

The Petitioner's next claim concerns the representation of appellate counsel. He alleges that appellate counsel was deficient for failing to meet with him and for omitting the perjured testimony issue in the appellate brief. In arguing that the State used perjured testimony to secure a conviction at trial, the Petitioner contends that Drug Task Force agents testified falsely regarding the chain of custody of the evidence. He asserts that if appellate counsel had met with him and included the issue, the appellate court "could have ruled that this evidence should not have been given much weight." Although appellate counsel could not recall whether she met with the Petitioner prior to filing the appellate brief, she testified that the Petitioner "was very opinionated" and that they discussed the issues before the brief was submitted. She further testified that the perjury issue was not previously raised and that it lacked merit. In its order denying relief, the post-conviction court specifically accredited the testimony of appellate counsel and found that "[t]here is absolutely nothing in the record to support this claim [of perjured testimony]." The court further found that appellate counsel "raised all the trial issues preserved for appeal as well as those sought by the Petitioner."

We conclude that the record supports the post-conviction court's determination that the Petitioner failed to prove either deficient performance or actual prejudice arising therefrom on the part of appellate counsel. Initially, we note that "[a]ppellate counsel are not constitutionally required to raise every conceivable issue on appeal." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004) (citing King v. State, 989 S.W.2d 319, 334 (Tenn. 1999)). Where a petitioner claims that counsel failed to raise a certain issue on appeal, this court should consider the merits of the issue. Id. Here, the Petitioner asserts that the appellate court would have reversed his conviction if counsel had raised the perjured testimony issue. However, he has failed to support his allegation with proof or argument. There is no evidence in the record that State witnesses presented perjured testimony. Moreover, the Petitioner conceded that the perjury issue related to the chain of custody of the evidence and that appellate counsel argued on appeal that the State failed to establish the chain of custody. Based on appellate counsel's representation, the Petitioner's sentence was successfully reduced by twenty-four years. The Petitioner has not demonstrated that but for appellate counsel's failure to raise the perjured testimony issue, the outcome of the proceeding would have been different. Accordingly, he is not entitled to relief on this claim.

As his final ground for relief, the Petitioner argues that he is entitled to post-conviction relief based on the cumulative error doctrine. However, we have considered each of the Petitioner's allegations of ineffective assistance of counsel and have concluded that he is not entitled to relief on any of his claims. Based on the record, we cannot conclude that the results of the Petitioner's trial and direct appeal were undermined or that the proceedings were fundamentally unfair because of the alleged errors of trial and appellate counsel. See Strickland, 466 U.S. at 670 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). The Petitioner is not entitled to post-conviction relief, and the judgment of the post-conviction court is affirmed.

## CONCLUSION

After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-11-